UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Civil Action No. 13-189-HRW

MARY BETH BRADLEY, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits on Decwember3, 2008, alleging disability beginning on July 15, 2006, due to "bi-polar, congenital disc disease, irritable bowel syndrome, back pain and depression" (Tr. 312). This application was denied initially and on reconsideration. Thereafter, three administrative hearing was conducted by Administrative Law Judge Deborah Smith (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Howard Caston, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 8-25).

Plaintiff was forty-six years of age on her alleged onset date and fifty-two years of age the date of the ALJ's decision (Tr. 36, 295, 307). She had at least a high school education, and her past relevant work included work as an administrative clerk (Tr. 39-42, 85-86, 312-14, 318-19, 330-38, 383-84, 392-93, 396).

At Step 1, the ALJ noted that Plaintiff had worked after her alleged onset date, but found her work did not rise to the level of substantial gainful activity (Tr. 13). At Step 2, the ALJ found Plaintiff had severe impairments of right shoulder rotator cuff tear, degenerative disc disease, a history of pancreatitis, depression, and a history of polysubstance abuse (Tr. 13). At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 14). The ALJ then found Plaintiff had the residual functional capacity (RFC) to perform medium work, i.e., she could limit fifty pounds occasionally and twenty-five pounds

2

frequently, with the same push/pull restrictions; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday (Tr. 15). The ALJ also found Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could occasionally climb ladders, ropes, and scaffolds; was limited to occasional overhead reaching with her right upper extremity; needed to avoid concentrated exposure to vibration; and was limited to simple to moderately complex tasks that involved only superficial contact with the public and co-workers (Tr. 15). Given Plaintiff's RFC, the demands of her former work, and the testimony of the vocational expert (VE), the ALJ found at Step 4 that Plaintiff could perform her past relevant work as an administrative clerk (Tr. 23-24, 86-88). The ALJ also made an alternative finding at the 5th and final step that Plaintiff could perform other jobs identified by the VE, even if she was limited to sedentary work (Tr. 24-25, 89-90). The ALJ, therefore, concluded Plaintiff was not disabled (Tr. 25).

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 17 and 18] and this matter is ripe for decision.

## II. ANALYSIS

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human*

3

*Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

Plaintiff's sole argument is that the ALJ did not properly assess the limitations she allegedly had due to her right shoulder impairment. Contrary to Plaintiff's argument, the ALJ properly evaluated Plaintiff's right shoulder impairment and its effects of her ability to work. The ALJ found Plaintiff's severe impairments included a right shoulder rotator cuff tear (Tr. 13). The ALJ limited Plaintiff to the lifting and carrying requirements of medium work (i.e., fifty pounds occasionally and twenty pounds frequently) and found she was limited to only occasional overhead reaching with her right upper extremity (Tr. 15). The record does not support additional findings with regard to Plaintiff's right shoulder. A review of the record establishes that Plaintiff sought and received only minimal treatment for her right shoulder, and had extended periods without treatment for her shoulder. Moreover, the effectiveness of her pain medication for much of the relevant period also indicate her right shoulder impairment was not as limiting as she claimed and would not have caused additional limitations for any period of at least twelve months.

Although Plaintiff alleged she became disabled on July 7, 2006, the medical records from a year before her alleged onset date through early 2010 do not indicate she had any complaints or concerns related to her shoulders (Tr. 532-55, 557-600, 609-13, 615-31). Records from March 2010

4

reveal some complaint of shoulder pain for which she was prescribed medication (Tr. 683). Plaintiff reported that medication controlled her alleged pain (Tr. 680-682).

In 2011, Plaintiff went to ER after she slipped and jerked her back, but she only complained of back pain (Tr. 850-56). Objective examination findings related to her upper extremities were normal, including 5/5 strength and no tenderness (Tr. 851-52). A list of her past medical history also did not include a diagnosis related to her shoulders (Tr. 851). Plaintiff was admitted to the hospital on April 26, 2011, for pancreatitis and low back pain, but again, she did not complain of shoulder problems (Tr. 719-21, 836-49). Examination findings regarding Plaintiff's extremities were unremarkable, and a list of her past medical history and her discharge diagnoses did not include a diagnosis related to Plaintiff's shoulders (Tr. 719, 836, 838, 840-41). Moreover, follow-up visits to Healthpoint Family Care on May 18, 2011, and July 6, 2011, do not indicate Plaintiff complained of shoulder pain, and the examiner did not note any history, clinical abnormalities, or diagnoses related to Plaintiff's shoulders (Tr. 709-18).

The only indication of shoulder issues in 2011 appear in notes from Thomas Bender, M.D., a physician Plaintiff saw at the behest of her attorney. She alleged a six to eight month history of right shoulder dysfunction, an inability to lift her right arm, and limited strength in her right arm. Dr. Bender noted Plaintiff displayed tenderness, some reduced range of motion, and significant weakness in her right shoulder, and he opined that Plaintiff's right shoulder rendered her "unable to work" (Tr. 812-13). The ALJ was correct in disregarding these conclusory remarks. It is within the province of the ALJ to make the legal determination of disability. The ALJ is not bound by a treating physician's conclusory statement, particularly where the ALJ determines, as she did in this case, where these is medical proof that Plaintiff retains the RFC to work in some capacity in addition her past work. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). Notably, on appeal,

Plaintiff does not contest the ALJ's decision to discount Dr. Bender's opinion.

Two days after seeing Dr. Bender, Plaintiff visited Healthpoint Family Care on December 14, 2011, with complaints of right shoulder pain (Tr. 830-32). Plaintiff displayed tenderness and reduced range of motion in her shoulder on examination, and an MRI scan of Plaintiff's right shoulder obtained on December 16, 2011, showed a superspinatus tendinopathy with juxta enthesial pinhole unretracted full-thickness cuff tear (Tr. 828-29, 831). Plaintiff maintains that the MRI scan findings prove she had greater limitations than as found by the ALJ. However, the MRI results are a diagnosis, but do not speak to any limitations. It is well established that "[t]he mere diagnosis [of a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff sought further treatment for her alleged shoulder pain in January 2012. When Plaintiff visited the emergency room on January 4, 2012, she claimed to have had shoulder pain for five years, but as discussed above, Plaintiff rarely complained of shoulder pain prior to 2010 (Tr. 858). Plaintiff returned to Healthpoint Family Care on January 17, 2012, and an examiner noted Plaintiff displayed tenderness and reduced range of motion in her right shoulder (Tr. 821-22). However, the examiner merely advised Plaintiff to avoid activities that increased discomfort, prescribed medication, and recommended she apply moist heat and/or ice to her shoulder (Tr. 822).

There is simply not enough evidence in the record that Plaintiff's right shoulder impairment would cause any limitation beyond that determined by the ALJ. Any medical treatment for her shoulder was conservative and sporadic. The Court finds no error in the ALJ's findings in this regard.

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 19th day of March, 2015.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

Henry R. Wilhoit, Jr., Senior Judge